UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| BRANDON M. LEVY and | ) | |
| JENNIFER A. LEVY, | ) | |
| | ) | |
| DEBTORS. | ) | CASE NO.  16-39323 |
| _____ | ) | |
| PATRICK S. LAYNG | ) | |
| UNITED STATES TRUSTEE, | ) | ADV. NO. |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| BRANDON M. LEVY and | ) | |
| JENNIFER A. LEVY, | ) | |
| | ) | |
| DEFENDANTS. | ) | HON. A. BENJAMIN GOLDGAR |
| | ) | (LAKE COUNTY) |

## COMPLAINT OBJECTING TO DEBTORS' DISCHARGES

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by and through his attorney, Elizabeth R. Brusa, and hereby requests this Court enter judgment denying the discharges of Brandon M. Levy and Jennifer A. Levy pursuant to sections 727(a)(2) and (a)(4) of title 11 of the United States Code.  In support thereof, and as for his Complaint, the U.S. Trustee respectfully states as follows:

## PARTIES

1.      Plaintiff is Patrick S. Layng, the duly appointed United States Trustee for the Northern District of Illinois, who is charged with supervising the administration of bankruptcy cases under title 28 of the United States Code, section 586(a).

2.      Plaintiff maintains his principal place of business in the Dirksen Federal Building, located at 219 South Dearborn Street, Room 873, Chicago, Illinois, County of Cook, 60604, which is within the jurisdiction of the Eastern Division of the Northern District of Illinois.

3.      Brandon M. Levy and Jennifer A. Levy (individually, "Mr. Levy" and "Mrs. Levy," and collectively, the "Defendants") are the joint debtors in the underlying bankruptcy case, case number 16-39323, filed in the Eastern Division of the Northern District of Illinois (the "Bankruptcy Case").

4.      Mr. Levy's address of record is 1445 Wimpole Street, E-008, Mundelein, Illinois, County of Lake, 60060, which is within the jurisdiction of the Eastern Division of the Northern District of Illinois.

5.      Mrs. Levy's address of record is 1357 Newport Street, Mundelein, Illinois, County of Lake, 60060, which is within the jurisdiction of the Eastern Division of the Northern District of Illinois.  Upon information and belief, Mrs. Levy now resides at 301 Albany Lane, Vernon Hills, Illinois, County of Lake, 60061, which is also within the jurisdiction of the Eastern Division of the Northern District of Illinois.

## JURISDICTION

6.      This Court has jurisdiction to hear and determine this adversary proceeding pursuant to title 28 of the United States Code, sections 157(b)(2)(I) and (J), and the United States District Court for the Northern District of Illinois's Internal Operating Procedure 15(a) and Local Rule 40.3.1.

7.      Plaintiff consents to entry of a final order or judgment by this Bankruptcy Court in this adversary proceeding.

8.      Venue of this adversary proceeding is proper in the United States District Court for the Northern District of Illinois pursuant to title 28 of the United States Code, sections 1334 and 1409(a).

9.      Plaintiff has standing to be heard on the issues hereby raised and authority to bring this Complaint under title 11 of the United States Code, sections 307 and 727(c)(1).

10.     This Complaint is timely as the final date for Plaintiff to object to Defendants' discharges has been extended to June 12, 2017.  *See* Dkt. 29.

## BACKGROUND

### I.      Defendants' Bankruptcy Case.

11.     On December 14, 2016 (the "Petition Date"), Defendants filed a joint, voluntary petition for relief under chapter 7 of title 11 of the United States Code, sections 101 *et seq.* (the "Bankruptcy Code").   With their petition, Defendants filed, *inter alia*, Schedules A – J, a Statement of Financial Affairs, and a Statement of Intention (collectively, the "Petition").  A true and correct copy of the Petition is attached hereto as Exhibit A.

12.     At all times relevant, Defendants have been represented by attorneys employed by David M. Siegel & Associates, including, but not limited to, David Siegel, Esq.; John Ellmann, Esq.; Christine H. Clar, Esq.; and Dustin Allen, Esq. (collectively, "Defendants' Counsel").

13.     Ilene F. Goldstein, Esq. (the "Chapter 7 Trustee"), is the appointed chapter 7 trustee in this Bankruptcy Case.

14.     Contemporaneous with filing the Petition, Defendants filed signed declarations (the "Declarations").  A true and correct copy of the Declarations is attached hereto as Exhibit B.

15.     Contemporaneous with filing the Petition, Defendants filed a signed Part 7 of the
Voluntary Petition for Individuals Filing for Bankruptcy (the "Petition Declaration").  *Ex. B*, at p.
1.  In the Petition Declaration, Defendants declared that they "examined this petition and …
declare under penalty of perjury that the information provided is true and correct."  *Id.*

16.     Contemporaneous with filing the Petition, Defendants filed a signed Declaration
About an Individual Debtor's Schedules (the "Schedules Declaration").  *Ex. B*, at p. 2.  In the
Schedules Declaration, Defendants declared, "[u]nder penalty of perjury … that [they had] read
the summary and schedules filed with this declaration and that they are true and correct."  *Id.*

17.     Contemporaneous with filing the Petition, Defendants filed a signed Part 12 of the
Statement of Financial Affairs (the "SOFA Declaration").  *Ex. B*, at p. 3.  In the SOFA
Declaration, Defendants declared that they "read the answers on this *Statement of Financial
Affairs* and any attachments, and [they] declare under penalty of perjury that the answers are true
and correct."  *Id.* (emphasis in original).

18.     On January 12, 2017, the Chapter 7 Trustee conducted Defendants' meeting of
creditors pursuant to section 341(a) of the Bankruptcy Code (the "341 Meeting").

19.     At the outset of the 341 Meeting, each Defendant swore an oath to tell the truth.

20.     Defendants testified at the 341 Meeting that all of the information included in the
Petition is true and correct and that Defendants had listed everything they owned in the Petition.

21.     On January 13, 2017, Defendants filed an Amended Schedule J (the "Amended
J").  *See* Dkt. 11.  A true and correct copy of the Amended J is attached hereto as <u>Exhibit C</u>.

22.     On January 30, 2017, Plaintiff filed a Motion for Rule 2004 Examination of the
Debtors [*see* Dkt. 16], which was granted on February 24, 2017.  *See* Dkt. 24.

23.    On March 2, 2017, counsel for Plaintiff served Defendants with subpoenas for production of documents, which included riders identifying the documents requested (the "Production Subpoenas").

24.    Defendants produced several documents responsive to the Production Subpoenas on April 3, 2017; May 19, 2017; and May 30, 2017.

25.    On April 10, 2017, counsel for Plaintiff served Defendants with subpoenas scheduling Rule 2004 Examinations of Mr. Levy and Mrs. Levy on May 31, 2017.

26.    On May 31, 2017, counsel for Plaintiff conducted a Rule 2004 Examination of Mrs. Levy and a Rule 2004 Examination of Mr. Levy (individually, the "Mrs. Levy 2004 Exam" and the "Mr. Levy 2004 Exam," and collectively the "2004 Exams").

27.    At the outset of the 2004 Exams, each Defendant swore an oath to tell the truth.

28.    At the 2004 Exams, each Defendant testified that all of the information included in the Petition, other than listing Mrs. Levy's rent expense twice on Schedule J, is true and correct.

29.    At the Mr. Levy 2004 Exam, Mr. Levy testified that he holds a four year college degree in finance from the University of Illinois.  Mr. Levy also took a course about life insurance and passed a corresponding examination.  Additionally, Mr. Levy took a course in real estate and passed the Florida real estate examination.

30.    At the Mrs. Levy 2004 Exam, Mrs. Levy testified that she also holds a four year college degree in finance from Santa Clara University.  Mrs. Levy's current job is Finance Manager/Business Partner to Merchandising at U.S. Foods.  She has held this position for the past three years.

31.    Defendants testified at the 2004 Exams that they are married but live separately.

## II.     Defendants' Undisclosed Trusts.

32.     Defendants had an obligation to disclose all legal, equitable, and beneficial interests they have in any and all trusts, future interests in property, and rights or powers exercisable for their benefit on item 25 of Schedule A/B of the Petition ("Schedule A/B").  *See Ex. A*, at p. 17.

33.     In response to item 25 of Schedule A/B, Defendants disclosed their interest in one trust: "Living Trust," which they valued at $0.  *Ex. A*, at p. 17.

34.     Defendants had an obligation to disclose all property they transferred to a self-settled trust of which they were beneficiaries within 10 years of the Petition Date on item 19 of the Statement of Financial Affairs (the "SOFA").  *See Ex. A*, at p. 51.

35.     In response to item 19 of the SOFA, Defendants marked, "No," indicating that they had not transferred any property into a self-settled trust within 10 years of the Petition Date. *Ex. A*, at p. 51.

36.     In response to the Production Subpoenas, Defendants produced the following trust documents:

   a.   Declaration of Trust for The Chucks Revocable Living Trust, signed on September 19, 2003, and naming Defendants as settlors and original trustees;

   b.   Agreement and Declaration of Trust for The Levy Family Trust, entered into on June 23, 2007, and naming Defendants as trustees and The Chucks Revocable Living Trust as beneficiary; and

    c.   Agreement and Declaration of Trust for the 5555 South Everett Avenue 3-4A Trust (the "Everett Trust"), entered into on March 11, 2011, and naming J. Koziol as Trustee and Mr. Levy as Beneficiary.[1]

37.    At the 2004 Exams, Defendants testified that the "Living Trust" disclosed on Schedule A/B refers to The Chucks Revocable Living Trust.

38.    Defendants failed to disclose their interest in The Levy Family Trust on the Petition and at the 341 Meeting.

39.    Additionally, Defendants failed to disclose their creation of, and all property transferred to, self-settling trusts within 10 years of the Petition Date, including The Levy Family Trust and the Everett Trust, on the Petition and at the 341 Meeting.

40.    Further, in response to the Production Subpoenas, Defendants failed to produce documentation of the property and assets owned by The Levy Family Trust and The Chucks Revocable Living Trust.  Although it is possible that all of the property owned by The Levy Family Trust and The Chucks Revocable Living Trust may have been otherwise disclosed on the Petition, Defendants' concealment and nondisclosure of the existence of The Levy Family Trust and failure to produce documentation regarding each trust's corpus makes it impossible for the Chapter 7 Trustee, this Court, and Defendants' creditors to ascertain Defendants' true financial condition.

41.    Defendants' failure to disclose (i) the existence of The Levy Family Trust; (ii) the property owned by The Chucks Revocable Trust and The Levy Family Trust; and (iii) the creation of, and transfers of property to, self-settled trusts within 10 years of the Petition Date,

---

[1] After formal discovery on this case is completed, more undisclosed trusts and the property each trust owns may be revealed and added to this cumulative list and Complaint.

had the capacity or potential to influence the actions of the Chapter 7 Trustee, this Court, or Defendants' creditors.

**III.    Defendants' Undisclosed Financial Accounts.**

   **a.    Defendants Enjoyed Legal or Equitable Interests in Nine Undisclosed Financial Accounts within a Year of the Petition Date.**

42.    Defendants had an obligation to disclose all legal or equitable interests in all deposits of money, including checking, savings, or other financial accounts, on item 17 of Schedule A/B. *See Ex. A*, at p. 16.

43.    Defendants disclosed ownership of only three financial accounts in response to item 17 of Schedule A/B: two checking accounts at MB Financial and a checking account at Chase Bank. *Ex. A*, at p. 16.

44.    Defendants had an obligation to disclose all financial accounts or instruments held in their names, or for their benefit, that were closed, sold, moved, or transferred within a year of the Petition Date on item 20 of the SOFA. *See Ex. A*, at p. 51.

45.    In response to item 20 of the SOFA, Defendants checked, "No," indicating that no financial accounts or instruments held in their names or for their benefit were closed, sold, moved, or transferred within a year of the Petition Date. *Ex. A*, at p. 51.

46.    In response to the Production Subpoenas, Defendants produced bank statements for the three checking accounts disclosed on Schedule A/B, including:

   a.    Joint Chase checking account ending in 4508,

   b.    Mrs. Levy's MB Financial checking account ending in 9703, and

   c.    Mr. Levy's American Chartered (which later became MB Financial) checking account ending in 4291.

47.     Also, in response to the Production Subpoenas, Defendants produced bank statements for the following <u>undisclosed</u> financial accounts:

    a.  Mr. Levy's MB Financial savings account ending in 3533;

    b.  Urban Real Estate Development, Inc.'s ("Urban"), American Chartered (which later became MB Financial) checking account ending in 7382;

    c.  TNP Capital Management, Inc.'s ("TNP"), Chase checking account ending in 4189; and

    d.  Urban's Chase checking account ending in 8684.

48.     At the 2004 Exams, Defendants testified that they freely move money from Urban and TNP's bank accounts into their personal bank accounts, for their personal use, whenever Urban and TNP's accounts have excess funds.  Defendants testified that they are not paid by either Urban or TNP by a salary or dividend disbursements.  Also, Defendants testified that they do not transfer funds from Urban and TNP's bank accounts into their personal bank accounts according to a regular or set payment schedule.

49.     Defendants also testified at the 2004 Exams that no written loan agreements are created when Defendants transfer funds from their personal bank accounts to Urban and TNP's bank accounts.  Additionally, Urban and TNP transfer funds to and from one another, for which no written loan agreements are created.

50.     Also at the 2004 Exams, Defendants testified as to having legal or equitable interests in the additional following <u>undisclosed</u> bank accounts:

    a.  A Wells Fargo account;

    b.  A PayPal account;

    c.  Mrs. Levy's Chase checking account that was opened in late 2015 and closed in early 2016; and

    d.  Two savings accounts belonging to Defendants' daughters.

51.    As to the Wells Fargo account, the PayPal account, Mrs. Levy's former Chase checking account, and the Defendants' daughters' savings accounts, Defendants failed to disclose their ownership or use of any of those accounts until such accounts were explicitly identified and asked about by counsel for Plaintiff at the 2004 Exams.

**b.    The Undisclosed Financial Accounts are Material to this Bankruptcy Case.**

52.    In sum, on the Petition, at the 341 Meeting, and at the 2004 Exams, until asked explicitly about each individual account, Defendants failed to disclose both the existence of and Defendants' interests in the following nine financial accounts:

    a.  Mr. Levy's MB Financial savings account ending in 3533;

    b.  Urban's American Chartered (which later became MB Financial) checking account ending in 7382;

    c.  TNP's Chase checking account ending in 4189;

    d.  The Wells Fargo account;

    e.  The PayPal account;

    f.  Urban's Chase checking account ending in 8684;

    g.  Mrs. Levy's Chase checking account; and

    h.  Defendants' daughters' two savings accounts (collectively, the "Undisclosed Financial Accounts").[2]

---

[2] After formal discovery on this case is completed, more undisclosed financial accounts may be revealed and added to this cumulative list.

53.     Mr. Levy actively used the MB Financial savings account ending in 3533 within a year of the Petition Date.  The existence and Mr. Levy's use of this savings account were not disclosed on the Petition or at the 341 Meeting.

54.     Mr. Levy's income from driving for Lyft and Uber was deposited into Urban's account ending in 7382 within a year of the Petition Date.  Mr. Levy transferred some of that income to his personal account for personal use, not according to a salary or regular schedule, and paid some personal expenses from Urban's account ending in 7382 within a year of the Petition Date.

55.     The existence and Mr. Levy's use of Urban's account were not disclosed on the Petition or at the 341 Meeting.  In fact, at the 341 Meeting, Mrs. Levy testified that Urban and TNP don't own any assets.

56.     The approximately $55,500 proceeds from Defendants' sale of real estate in October 2014 were deposited into TNP's Chase account ending in 4189.  TNP's Chase account ending in 4189 remains open and active.  Within a year of the Petition Date, Defendants deposited funds into TNP's Chase account and used TNP's Chase account to pay for Defendants' life insurance.

57.     The existence and Defendants' use of TNP's Chase account were not disclosed on the Petition or at the 341 Meeting.  Further, at the 341 Meeting, Mrs. Levy testified that Urban and TNP don't own any assets.

58.     Defendants deposited funds into the Wells Fargo account as recently as 2015, and the Wells Fargo account remains open and active.  The existence and Defendants' use of the Wells Fargo account were not disclosed on the Petition or at the 341 Meeting.

59.     Defendants deposited income from leasing timeshares in Hawaii into the PayPal account within a year of the Petition Date.  Additionally, Defendants transferred funds from the PayPal account into their personal accounts for personal use within a year of the Petition Date. The existence and Defendants' use of the PayPal account were not disclosed on the Petition or at the 341 Meeting.

60.     Urban's Chase checking account ending in 8684 was actively used by Defendants and then closed within a year of the Petition Date.  As recently as January 2013, over $300,000 was transferred into this account.  The existence and closure within a year of the Petition Date of Urban's Chase account were not disclosed on the Petition or at the 341 Meeting.

61.     Mrs. Levy's Chase checking account was actively used and then closed within a year of the Petition Date.  The existence and closure within a year of the Petition Date of Mrs. Levy's Chase checking account were not disclosed on the Petition or at the 341 Meeting.

62.     At the 2004 Exams, Defendants testified that Mrs. Levy is a signor on their daughters' two savings accounts, and Defendants transferred funds from those accounts into their personal accounts for personal use within a year of the Petition Date.  The existence of and Defendants' interest in and use of their daughters' savings accounts were not disclosed on the Petition or at the 341 Meeting.

63.     Defendants' undisclosed interests in the Undisclosed Financial Accounts are material to this Bankruptcy Case.

64.     Defendants' concealment and nondisclosure of the Undisclosed Financial Accounts prevented the Chapter 7 Trustee, this Court, and Defendants' creditors from ascertaining Defendants' true financial condition.

65.     Further, Defendants' concealment and nondisclosure of the existence and use of the Undisclosed Financial Accounts had the capacity or potential to influence the actions of the Chapter 7 Trustee, this Court, and Defendants' creditors.

## IV.    Defendants' Concealed and Undisclosed Timeshare Rental Income.

### a.    Defendants' Hawaii Timeshares.

66.     On the Petition Date, Defendants disclosed 100% ownership interests in four timeshares in Hawaii (the "Timeshares"). *See Ex. A*, at pp. 13-14.

67.     At the 341 Meeting, Mrs. Levy testified that the Timeshares are fully paid off other than yearly payments of approximately $2,000 per timeshare.

68.     At the 341 Meeting, Defendants testified that they paid off almost all of the yearly payments for the Timeshares for 2016, but they still owed for 2017.

69.     According to bank statements produced to Plaintiff in response to the Production Subpoenas, Defendants paid over $1,900 toward the Timeshares' yearly payments on December 7, 2016, only one week before the Petition Date.

70.     According to bank statements produced to Plaintiff in response to the Production Subpoenas, Defendants also paid over $900 toward the Timeshares' yearly payments on October 5, 2016, just over two months before the Petition Date.

71.     Defendants' transfers of $1,900 and $900 within 90 days toward the Timeshares were not disclosed on the Petition or at the 341 Meeting.

72.     According to financial statements produced to Plaintiff in response to the Production Subpoenas, Defendants, from time to time, purchase additional weeks for use of the Timeshares.  Defendants purchased one or more additional weeks for use of the Timeshares within a year of the Petition Date.

    **b.**    **Defendants' Income from Leasing the Timeshares.**

73.    At the 2004 Exams, Defendants testified that they leased the Timeshares in exchange for rent of approximately $1,750 or more per stay.

74.    At the 2004 Exams, Defendants testified that they deposited most of the rent received from leasing the Timeshares into a PayPal account.

75.    Upon information and belief, Defendants received rent from leasing the Timeshares within a year of the Petition Date.

76.    According to tax returns produced to Plaintiff in response to the Production Subpoenas, Defendants collected approximately $5,800 in rent from the Timeshares in 2015.

77.    According to tax returns produced to Plaintiff in response to the Production subpoenas, Defendants collected approximately $20,000 in rent from the Timeshares in 2014.

78.    Defendants failed to disclose the income received from leasing the Timshares as required on the Petition or at the 341 Meeting.

    **c.**    **Defendants' Nondisclosures and Concealment of the Timeshares' Rental Income.**

79.    Defendants had an obligation to disclose all income regularly received from rental property on item 8a of Schedule I of the Petition ("Schedule I").

80.    Defendants testified at the 2004 Exams that the $5,930 listed on item 8a of Schedule I was from leasing rental properties in Florida.  *See Ex. A*, at p. 41.  Accordingly, the $5,930 listed on item 8a of Schedule I does not include rental income from the Timeshares, and rental income from leasing the Timeshares is thus not disclosed on Schedule I.

81.    Yet, Defendants included yearly expenses for each of the four Timeshares on the Amended J.  *See Ex. C*, at p. 2.

82.    Defendants also had an obligation to disclose rental income from leasing the Timeshares on item 5 of the SOFA.  *See Ex. A*, at p. 48.

83.    According to documents produced to Plaintiff in response to the Production Subpoenas, the only income disclosed on the SOFA is from Defendants' salaried or hourly work. Defendants failed to disclose any income on the SOFA from operating a business or from leasing rental properties, including the Timeshares.

84.    Defendants had an obligation to disclose all deposits of money in which they have any legal or equitable interest, including checking, savings, or other financial accounts, on item 17 of Schedule A/B.  *See Ex. A*, at p. 16.

85.    Defendants failed to disclose the PayPal account into which the rental income from leasing the Timeshares was deposited.  *See Ex. A*, at p. 16.

86.    Defendants failed to disclose the fact that they leased and collected rent from the Timeshares at the 341 Meeting.

87.    At the 2004 Exams, Defendants did not disclose their interest in the PayPal account into which the rental income from leasing the Timeshares was deposited until counsel for Plaintiff explicitly identified and asked about the PayPal account.

88.    By failing to disclose the Timeshares' rental income and the PayPal account into which that income was deposited on Schedule I, the SOFA, and at the 341 Meeting, Defendants intentionally concealed their rental income from leasing Timeshares and their interest in the PayPal account.

89.    Further, by failing to disclose the Timeshares' rental income and the PayPal account at the 2004 Exams until counsel for Plaintiff explicitly asked about the income and the PayPal account, Defendants continued to intentionally conceal those assets.

90.     Defendants' concealment of the Timeshares' rental income and the PayPal account into which that income is deposited had the capacity or potential to influence the actions of the Chapter 7 Trustee, this Court, or Defendants' creditors.

**V.    Defendants' Undisclosed Transfers of Real Estate and Income from Real Estate Sales.**

**a.     Defendants' Interest in the Everett Condo.**

91.     Upon information and belief, on or before March 11, 2011, Mr. Levy held title to real property located at 5555 S. Everett, Units A3 and A4, Chicago, Illinois, County of Cook, 60615 (the "Everett Condo").

92.     On or around March 11, 2011, Mr. Levy transferred title of the Everett Condo to a trust called the 5555 South Everett Avenue 3-4A Trust (the Everett Trust).

93.     The Everett Trust named J. Koziol as trustee and Mr. Levy as beneficiary.

94.     J. Koziol, as trustee of the Everett Trust, did not pay consideration for the transfer of the Everett Condo.

95.     Mr. Levy, as beneficiary of the Everett Trust, retained unfettered control over the Everett Condo, including, *inter alia*, the right to direct the trustee to sell the Everett Condo, the right to manage and control the Everett Condo, and the right to receive all proceeds from the sale or rental of the Everett Condo.

**b.     Defendants' Undisclosed Sale of the Everett Condo.**

96.     According to tax returns produced to Plaintiff in response to the Production Subpoenas, Defendants sold the Everett Condo on April 30, 2015, for $406,000.

97.     At the 2004 Exams, Defendants testified that proceeds from the Everett Condo's sale went toward repaying investors and setting off debts owed by Defendants.

98.     On item 18 of the SOFA, Defendants had an obligation to disclose all sales and transfers of property outside the ordinary course of Defendants' business or financial affairs that occurred within two years of the Petition Date.  *See Ex. A*, at p. 51.  Also, Defendants had an obligation to disclose all gross income, before deductions and exclusions and regardless of whether that income is taxable, received in 2015 on items 4 and 5 of the SOFA.  *See Ex. A*, at pp. 47-48.

99.     Defendants failed to disclose the sale of the Everett Condo on items 4 or 5 and item 18 of the SOFA.  *See Ex. A*, at pp. 47-48, 51.  Alternatively, if the sale of the Everett Condo was in Defendants' ordinary course of business, Defendants failed to include income, before deductions and exclusions, related to operation of that business on items 4 or 5 of the SOFA.  *See Ex. A*, at pp. 47-48.

100.    Defendants' failure to disclose the sale of the Everett Condo within two years of the Petition Date had the capacity or potential to influence the actions of the Chapter 7 Trustee, this Court, or Defendants' creditors.

**c.      Defendants' Interest in the Hampden Condo.**

101.    At the 2004 Exams, Defendants testified that they had owned and leased real estate located at 2700 N. Hampden Court, Chicago, Illinois (the "Hampden Condo").

102.    According to documents produced to Plaintiff in response to the Production Subpoenas and Defendants' testimonies at the 2004 Exams, Defendants sold the Hampden Condo in October 2014.

**d.      Defendants' Nondisclosure of Income from the Sale of the Hampden Condo.**

103.    According to documents produced to Plaintiff in response to the Production Subpoenas and Defendants' testimonies at the 2004 Exams, Defendants received cash proceeds of approximately $55,500 from the sale of the Hampden Condo.

104.    At the 2004 Exams, Defendants testified that deposits and transfers of tens of thousands of dollars into Defendants' business and personal bank accounts in May and June of 2015 represented the proceeds of the sale of the Hampden Condo.

105.    Defendants had an obligation to disclose all gross income, before deductions and exclusions and regardless of whether that income is taxable, received in 2014 and 2015 on items 4 and 5 of the SOFA. *See Ex. A*, at pp. 47-48.

106.    Defendants failed to disclose the income they received from the sale of the Hampden Condo on items 4 and 5 of the SOFA. *Ex. A*, at pp. 47-48.

107.    Defendants' failure to disclose the income received from the sale of the Hampden Condo had the capacity or potential to influence the actions of the Chapter 7 Trustee, this Court, or Defendants' creditors.

**VI.    Defendants' Undisclosed Business Interests and Connections.**

108.    Defendants had an obligation to disclose details about their businesses or connections to any businesses within four years of the Petition Date on item 27 of the SOFA. *See Ex. A*, at p. 52.

109.    In response to item 27 of the SOFA, Defendants disclosed their interests in TNP and Urban. *Ex. A*, at p. 53.

**a.    Defendants' Interest in Windsor.**

110.    In response to item 44 of Schedule A/B, Defendants disclosed their ownership of "Windsor" as business-related property not already listed. *Ex. A*, at p. 19.

111.    In response to item 42 of Schedule A/B, Defendants listed "No," indicating that they do not enjoy any interests in partnerships or joint ventures. *Ex. A*, at p. 19.

112.    Windsor, LP ("Windsor"), is a partnership in which Defendants own an 8.33% interest.

113.    According to documents produced to Plaintiff in response to the Production Subpoenas, Defendants originally entered into the Windsor partnership through their business Purple Mango Enterprises, LLC ("Purple Mango").    At the 2004 Exams, Defendants testified that Purple Mango ceased operations and dissolved, at which point Purple Mango's assets were transferred to Defendants, including the partnership with Windsor.

114.    Defendants testified at the 2004 Exams that Windsor is in the business of purchasing, flipping, and reselling real estate in Alabama.    Defendants testified that when the proceeds from a sale of real estate exceed the mortgage owed on that property, those proceeds are divided among Windsor's partners.

115.    At the 2004 Exams, Defendants testified that Windsor still owns some real estate. Thus, if Windsor sells that real estate for more than the mortgages securing it, Defendants will receive a share of the proceeds.

116.    Defendants failed to disclose their partnership interest in Windsor in response to item 42 of Schedule A/B and in response to item 27 of the SOFA.    Defendants also failed to disclose their interest in potential income from the sale of Windsor's real estate as a contingent or unliquidated claim in response to item 34 of Schedule A/B.    Additionally, Defendants failed to disclose their percentage of ownership of Windsor's real estate as a Windsor partner in response to item 1 of Schedule A/B.    Finally, Defendants failed to disclose their partnership in Windsor, interest in real estate owned by Windsor, and potential income from the sale of Windsor's real

estate as any other property of any kind not already listed in response to item 53 of Schedule A/B. *See Ex. A.*

117.   Even though Defendants disclosed "Windsor" in response to item 44 of Schedule A/B, disclosure of their partnership interest in this item is misleading and may have prevented the Chapter 7 Trustee, this Court, and Defendants' creditors from ascertaining Defendants' true financial condition.

118.   Further, Defendants' failure to adequately disclose their partnership interest Windsor and interest in the property Windsor owns had the capacity or potential to influence the actions of the Chapter 7 Trustee, this Court, and Defendants' creditors.

**b.**   **Defendants' Undisclosed Business Interests within Four Years of the Petition Date.**

119.   According to documents produced to Plaintiff in response to the Production Subpoenas and Defendants' testimonies at the 2004 Exams, Defendants owned or were officers or managing members of Purple Mango until Purple Mango dissolved.

120.   At the 2004 Exams, Defendants testified that Purple Mango formally dissolved in 2013, which is within four years of the Petition Date.

121.   Defendants failed to disclose their interest in Purple Mango in response to item 27 of the SOFA. *Ex. A*, at p. 53.

122.   According to documents produced to Plaintiff in response to the Production Subpoenas and Defendants' testimonies at the 2004 Exams, Defendants owned or were officers or managing members of TNP Enterprises.

123.   At the 2004 Exams, Defendants testified that TNP Enterprises formally dissolved in 2013.

124.    Defendants failed to disclose their interest in TNP Enterprises in response to item 27 of the SOFA. *Ex. A*, at p. 53.

## VII.    Defendants' Undisclosed Jewelry.

125.    In response to item 12 of Schedule A/B, Defendants listed "No," indicating that they do not own any jewelry. *Ex. A*, at p. 15.

126.    At the 2004 Exams, Defendants testified that they own three watches, costume jewelry, a gold engagement ring with a one carat diamond, and two pairs of cufflinks.

127.    Upon information and belief, Defendants may also own family heirloom jewelry.

128.    Defendants failed to disclose their ownership of jewelry on the Petition and at the 341 Meeting.

## VIII.    Defendants' Undisclosed Intellectual Property.

129.    In response to item 26 of Schedule A/B, Defendants marked, "No," indicating that they do not own any intellectual property. *Ex. A*, at p. 17.

130.    At the 2004 Exams, Defendants testified that they own, or owned, domain names for Urban and TNP.

131.    Defendants also testified at the 2004 Exams that they own the domain name "TheLevys.com" and an exchange for email at "@thelevys.com."

132.    Defendants failed to disclose their ownership of intellectual property on the Petition and at the 341 Meeting.

## COUNT I – FRAUDULENT CONCEALMENT OF PROPERTY
## 11 U.S.C. § 727(a)(2)(A)

133.    Plaintiff repeats and realleges all of the preceding paragraphs of this Complaint as though fully set forth herein.

134.    Section 727(a)(2) of the Bankruptcy Code states, in relevant part, "The court shall grant the debtor a discharge, unless – the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed … property of the debtor, within one year before the date of the filing of the petition."  11 U.S.C. § 727(a)(2)(A).

135.    In and in connection with this Bankruptcy Case, including on the Petition, at the 341 Meeting, and at the 2004 Exams, Defendants concealed property or interests in property owned within one year of the Petition Date.

136.    The property that Defendants concealed includes, but is not limited to, Defendants' (i) interest in rental income from the Timeshares, (ii) interests in the Undisclosed Financial Accounts, (iii) interest in The Levy Family Trust, (iv) ownership of jewelry, and (v) ownership of intellectual property (collectively, the "Property").[3]

137.    The Property constitutes property of Defendants' bankruptcy estate pursuant to section 541(a) of the Bankruptcy Code.

138.    Defendants acted with actual intent to defraud, hinder, or delay their creditors or the Chapter 7 Trustee when concealing the Property.

139.    In concealing the Property, Defendants acted with a reckless and cavalier disregard for the truth.

140.    Defendants knew that failing to disclose their interests in the Property could seriously mislead their creditors and/or the Chapter 7 Trustee.

_____

[3] Plaintiff alleges that each of the assets constituting the Property, individually and/or collectively, was fraudulently concealed and thus needs not establish that all of the Property was concealed to satisfy his burden under this count. Satisfaction of the elements of section 727(a)(2) as to any one of the enumerated concealed assets individually should result in a denial of discharge.

141.    Defendants failed to inform Defendants' Counsel as to the existence of and Defendants' use of the Property.

142.    Defendants did not rely on advice from Defendants' Counsel to fail to disclose the existence of or Defendants' use of the Property.  Alternatively, if Defendants relied on advice from Defendants' Counsel to fail to disclose the existence of and Defendants' use of the Property, such reliance was not reasonable.

143.    By concealing the Property they owned within one year of the Petition Date, Defendants hindered, delayed, and otherwise prevented their creditors from reaching the Property to satisfy Defendants' debts.

WHEREFORE, Plaintiff respectfully prays that this Court render a judgment

A.    finding Mr. Levy, with intent to hinder, delay, and/or defraud his creditors or the Chapter 7 Trustee, transferred, removed, destroyed, mutilated, or concealed property of Defendants' bankruptcy estate, within one year before the date of filing this Bankruptcy Case;

B.    finding Mrs. Levy, with intent to hinder, delay, and/or defraud her creditors or the Chapter 7 Trustee, transferred, removed, destroyed, mutilated, or concealed property of Defendants' bankruptcy estate within one year before the date of filing this Bankruptcy Case;

C.    denying Mr. Levy's discharge pursuant to section 727(a)(2)(A) of the Bankruptcy Code;

D.    denying Mrs. Levy's discharge pursuant to section 727(a)(2)(A) of the Bankruptcy Code; and

E.    ordering all other and further relief as this Court deems proper and just.

## COUNT II – FALSE OATHS
## 11 U.S.C. §§ 727(a)(4)(A)

144.    Plaintiff repeats and realleges all of the preceding paragraphs of this Complaint as though fully set forth herein.

145.    Section 727(a)(4)(A) of the Bankruptcy Code states, in relevant part, "The court shall grant the debtor a discharge, unless … the debtor knowingly and fraudulently, in or in connection with the case – made a false oath or account."  11 U.S.C. § 727(a)(4)(A).

146.    In and in connection with this Bankruptcy Case, including on the Petition, at the 341 Meeting, and at the 2004 Exams, Defendants made numerous false oaths or accounts, including, but not limited to, those regarding Defendants' (i) rental income from leasing the Timeshares, (ii) interests in the Undisclosed Financial Accounts, (iii) interests in The Levy Family Trust and the Everett Trust, (iv) transfer of the Everett Condo, (v) income received from the sales of the Everett Condo and the Hampden Condo, (vi) interests in Purple Mango and TNP Enterprises within four years of the Petition Date, (vii) ownership of jewelry, and (viii) ownership of intellectual property (collectively, the "False Oaths").[4]

147.    Defendants acted with actual intent to defraud, hinder, or delay their creditors or the Chapter 7 Trustee when making the False Oaths.

148.    In making the False Oaths, Defendants acted with a reckless and cavalier disregard for the truth.

149.    The False Oaths bear a relationship to Defendants' estate transactions, concern the discovery of Defendants' assets, and/or concern the existence and disposition of Defendants' property.

---

[4] Plaintiff alleges that each of the oaths or accounts constituting the False Oaths, individually and/or collectively, was made in or in connection with this Bankruptcy Case and thus needs not establish that all of the False Oaths were falsely made to satisfy his burden under this count.  Satisfaction of the elements of section 727(a)(4) as to any one of the enumerated false oaths individually should result in denial of discharge.

150.    Defendants read the statements and representations they made in the Petition before declaring, under penalty of perjury, as to their veracity.

151.    Defendants reviewed the statements and representations made in the Petition with Defendants' Counsel before declaring, under penalty of perjury, as to their veracity.

152.    Defendants received legal counsel and advice regarding those statements and representations, before declaring, under penalty of perjury, as to their veracity.

153.    Defendants failed to inform Defendants' Counsel as to the False Oaths, or the truth about the False Oaths, that Defendants made in and in connection with this Bankruptcy Case.

154.    Defendants did not rely on advice from Defendants' Counsel in making the False Oaths.   Alternatively, if Defendants relied on advice from Defendants' Counsel to make the False Oaths, such reliance was not reasonable.

155.    Defendants each swore an oath as to the veracity of his or her testimony at the 341 Meeting and the 2004 Exams.

156.    Defendants knew that some of the statements and representations made in the Petition, at the 341 Meeting, and at the 2004 Exam were false.

157.    As of the date of filing this Complaint, the False Oaths in the Petition remain uncorrected, thereby demonstrating Defendants' continuing reckless and cavalier disregard for the truth.

WHEREFORE, Plaintiff respectfully prays that this Court render a judgment

A.  finding Mr. Levy knowingly and fraudulently made false oaths or accounts in or in connection with this Bankruptcy Case;

B.   finding Mrs. Levy knowingly and fraudulently made false oaths or accounts in or in connection with this Bankruptcy Case;

C.   denying Mr. Levy's discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code;

D.   denying Mrs. Levy's discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code; and

E.   ordering all other and further relief as this Court deems proper and just.

RESPECTFULLY SUBMITTED:

PATRICK S. LAYNG
UNITED STATES TRUSTEE

DATED: June 12, 2017                        By: _/s/ Elizabeth R. Brusa_
                                                Elizabeth R. Brusa, Trial Attorney
                                                Office of the U.S. Trustee
                                                219 South Dearborn, Room 873
                                                Chicago, Illinois  60604
                                                (312) 886-5786